UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

SHARON GREEN,

   Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

   Defendant.

Case No. EDCV 10-01294 AJW

MEMORANDUM OF DECISION

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [JS 2-3]. In a February 4, 2009 written hearing decision that constitutes the Commissioner's final decision in this case, an administrative law judge (the "ALJ") found that plaintiff had a severe impairment consisting of an anxiety disorder. [JS 2; Administrative Record ("AR") 11]. The ALJ further found that plaintiff retained the residual functional capacity ("RFC") for work at all exertional levels, and that she had

nonexertional limitations restricting her to "entry level work" with "things rather than people." [AR 13]. The ALJ concluded that plaintiff's RFC precluded her from performing her past relevant work as a school bus driver and fast food worker. Relying on a vocational expert's testimony, the ALJ also found that plaintiff could perform unskilled jobs identified by the vocational expert that exist in significant numbers in the national economy. [AR 14-15]. Accordingly, the ALJ concluded that plaintiff was not disabled through the date of his decision.[1]

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The Court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Treating psychiatrist's opinion**

Plaintiff contends that the ALJ erroneously failed to mention her treating psychiatrist, Ochuko G. Diamreyan, M.D., or to discuss Dr. Diamreyan's findings. [JS 5-6].

---

[1] As the ALJ noted, plaintiff filed a prior application for disability insurance benefits and SSI benefits that was finally denied by the Commissioner on May 24, 2006. [JS 2-3; AR 40-47]. This Court affirmed the Commissioner's decision on August 5, 2010. [See JS, Exhibit A]. The final determination that plaintiff was not disabled through May 24, 2006 is entitled to res judicata effect and creates a presumption of continuing non-disability with respect to the period after that date. See Chavez v. Bowen, 844 F.2d 691, __ (9th Cir.1988) (observing that principles of res judicata apply to administrative decisions regarding disability and holding that a final determination that a claimant is not disabled creates a rebuttable presumption of continuing non-disability, and that the claimant is obliged to come forward with evidence of "changed circumstances," such as evidence of increased impairment severity, to rebut the presumption).

2

Where a treating doctor's opinion is not contradicted by that of another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). If a treating physician's opinion is contradicted by that of another doctor, the ALJ may not reject that opinion without providing specific, legitimate reasons, supported by substantial evidence in the record. Lester, 81 F.3d at 830-31; see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

On March 6, 2007, Dr. Diamreyan completed an "Initial Psychiatry Evaluation" report and a "Psychiatric Progress Note." [AR 197-202]. Plaintiff complained of a 4-year history of anxiety and depression, panic attacks, paranoia, mood swings, and variable sleep and interest levels. [AR 199]. She reported taking Paxil (paroxetine) and said she was seeing a therapist, Gabriele E. Roberts, a licensed marriage and family therapist. [AR 197; see AR 177-194].

Dr. Diamreyan noted that plaintiff exhibited anxiety, depressed mood, and irritability. She was cooperative and interactive. [AR 199, 202]. Dr. Diamreyan's mental status examination findings indicate that plaintiff had "fair" ability in some areas, such as insight, judgment, impulse control, memory, and attention. [AR 199]. Her speech, perception, thought process, and thought content were not impaired. Plaintiff reported being under "a lot of stress [-] daughter." [AR 199, 202]. Dr. Diamreyan assigned plaintiff a current and past year Global Assessment of Function ("GAF") score of 40. [AR 200].[2] Dr. Diamreyan gave plaintiff a diagnosis of panic disorder without agoraphobia (DSM-IV code 300.01) and described her prognosis as "guarded." [AR 200]. He continued plaintiff on Paxil and added Effexor (venlafaxine), which,

---

[2] The GAF score is a "multiaxial" assessment that reflects a clinician's subjective judgment of a patient's overall level of functioning by asking the clinician to rate two components: the severity of a patient's psychological symptoms, or the patient's psychological, social, and occupational functioning. The GAF score is the lower of the symptom severity score or the functioning severity score. A score of 40 signifies "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood . . . ." See American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders Multiaxial Assessment 30, 34 (4th ed. text rev. 2000) (DSM-IV); see also Morgan, 169 F.3d at 598 n. 1 ("Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient."); Sousa v. Chater, 945 F.Supp. 1312, 1319 n. 7, 1320 n. 8, 1322 n. 9 (E.D. Cal.1996) (discussing the significance of GAF scores), rev'd on other grounds, 143 F.3d 1240, 1245 (9th Cir.1998); see also Vargas v. Lambert, 159 F.3d 1161, 1164 (9th Cir.1998) (describing a GAF score as "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment").

like Paxil, is indicated for treatment of depression, panic disorder, and anxiety.[3] The record contains no other treatment reports from Dr. Diamreyan.

The treatment reports from plaintiff's therapist, Ms. Roberts, indicate that she treated plaintiff from 2003 until 2007. [AR 190]. Ms. Roberts diagnosed panic disorder with agoraphobia, depressive disorder not otherwise specified, and personality disorder not otherwise specified. [AR 189, 194]. She assigned plaintiff a GAF score of 49 or 50, indicating serious symptoms, such as suicidal ideation, severe obsessional rituals, frequent shoplifting, or any serious impairment in social, occupational, or school functioning.

In January 2007, Ms. Roberts completed a "Mental Disorder Questionnaire Form" indicating that plaintiff felt "weak" and "fatigued" after a panic attack and reported some difficulty interacting with others, but that she also reported the ability to perform routine daily activities. Asked to evaluate plaintiff's adaptation to work or work-like situations, Ms. Roberts said that plaintiff's "personality disorder may result in strained work relationships. [Plaintiff] reports feeling fatigued after panic attack." [AR 193].

In his summary of the evidence regarding plaintiff's mental impairment, the ALJ wrote:

> The claimant reports the onset of panic-like symptoms after being involved in a motor vehicle accident. According to the claimant, she experiences multiple episodes of anxiety that are so severe she cannot function well enough to perform her daily activities.
>
> The medical evidence documents that the claimant felt stressed over caring for her daughter and she could not deal effectively with stressors at work. Paxil and Effexor were prescribed and the claimant was referred to a therapist. She was never admitted to a psychiatric hospital.

[AR 14 (citing AR 158-202)].

The ALJ also remarked that Ms. Roberts indicated that plaintiff was easily distracted but could be refocused. Plaintiff "acknowledged problems interacting with neighbors and family members," but with treatment was able to maintain daily hygiene and grooming, leave home to shop, pick her daughter up from school, keep appointments, commute by bus, and complete simple tasks such as daily chores. Ms. Roberts "opined that the claimant may have difficulty interacting appropriately with co-workers." [AR 14 (citing AR 177-194)].

---

[3] See PubMed Health at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001037 and http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000947 (last visited July 13, 2011).

The ALJ adequately explained his evaluation of the treating source reports from Dr. Diamreyan and Ms. Roberts. Although the ALJ did not mention Dr. Diamreyan by name, he cited the evidence from that physician in his summary of the evidence. [See AR 14 (citing AR 158-202)]. The ALJ accurately observed that Dr. Diamreyan did not opine that plaintiff had any specific work-related functional limitations or that she was disabled within the meaning of the Social Security Act. Contrary to plaintiff's argument, the ALJ did not commit reversible error in failing specifically to discuss the GAF scores assigned by either Dr. Diamreyan or Ms. Roberts. "[A]n ALJ is not required to give controlling weight to a treating physician's GAF score; indeed, an ALJ's failure to mention a GAF score does not render his assessment of a claimant's RFC deficient." Chavez v. Astrue, 699 F.Supp.2d 1125, 1135 (C.D. Cal. 2009) (citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); Petree v. Astrue, 260 Fed.Appx. 33, 42 (10th Cir. 2007) (unpublished disposition) ("[A] low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record."); Ramos v. Barnhart, 513 F.Supp.2d 249, 261 (E.D. Pa. 2007) ("Clinicians use a GAF scale to identify an individuals' [sic] overall level of functioning, and a lower score may indicate problems that do not necessarily relate to the ability to hold a job.")(internal quotation marks omitted)); Baker v. Astrue, 2009 WL 279085, *3 (C.D. Cal. Feb. 4, 2009) ("In evaluating the severity of a claimant's mental impairments, a GAF score may help guide the ALJ's determination, but an ALJ is not bound to consider it."); Florence v. Astrue, 2009 WL 1916397, *6 (C.D. Cal. Jul. 1, 2009) ("[W]ithout more, the ALJ's assessment of the medical record is not deficient solely because it does not reference a particular GAF score."); 65 Fed.Reg. 50746, 50764-65 ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listings."). Given the absence of any suggestion by Dr. Diamreyan that plaintiff was disabled, and the fact that he evaluated her only once, the ALJ permissibly concluded that plaintiff's mental impairment was not disabling.

As a marriage and family therapist, Ms. Roberts was not an acceptable medical source, and therefore her opinion was entitled to less weight than that of a treating physician or psychologist. See 20 C.F.R. §§ 404.1513(a)&(d), 416.913(a)&(d) (defining an "acceptable medical source" and explaining that information

from "other sources" also may be considered); Gomez v. Chater, 74 F.3d 967, 970-971 (9th Cir.) (holding that the regulations permit the Commissioner to give "less weight" to opinions from "other sources"), cert. denied, 519 U.S. 881 (1996); see generally Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *1-*6. Nonetheless, the ALJ did consider Ms. Roberts's opinion, and he reasonably concluded that restricting plaintiff to entry-level work that involves things rather than people was consistent with Ms. Roberts's narrative assessment of plaintiff's functional abilities.

The Commissioner's nonexamining psychiatrist, Dr. Gregg, reviewed Dr. Diamreyan's findings and opined that plaintiff had affective and anxiety disorders that moderately limited her ability to carry out detailed instructions and interact appropriately with the general public and limited her mildly in other work-related functional abilities. Dr. Gregg concluded that plaintiff retained the ability for nonpublic simple repetitive tasks, and his opinion constitutes substantial evidence in the record supporting the ALJ's RFC finding.

**Lay witness testimony**

Plaintiff contends that the ALJ erred in rejecting a March 2007 third party function report completed by plaintiff's mother Rose Green, stating that plaintiff had anxiety attacks "at times" that affected her ability to sleep, to go out alone, handle money, work, handle stress, and be around other people. [AR 120-127].

The ALJ must take into account lay witness testimony about a claimant's symptoms but can reject that testimony by providing "reasons that are germane to each witness." Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.1993)).

The ALJ did not articulate reasons for rejecting plaintiff's mother's statements. Although that omission is legal error, the error was harmless. See McLeod v. Astrue, 681 F.3d 881, 886-888 (9th Cir. 2011) (holding that under the harmless error standard applicable to social security disability appeals, the record must show "a substantial likelihood of prejudice" to the party claiming error in order to warrant reversal and remand). Ms. Green's description of plaintiff's symptoms—impaired sleep and some difficulties going out by herself and handling stress—were adequately reflected in the ALJ's RFC finding limiting plaintiff to entry-level work. Ms. Green also said that plaintiff had no problem with personal care, could care for her daughter, fix meals, clean up, wash clothes, iron, go shopping, go for walks, use public transportation, ride in a car, pay bills, count change, use a checkbook, watch television, talk to family and

friends on the phone, and attend church. [AR 120-127]. Furthermore, plaintiff testified during the hearing that she took anti-anxiety medication, and that while the medication did not entirely control her symptoms of panic and anxiety, it controlled "most of it." Plaintiff also acknowledged that she was not receiving therapy or treatment other than her medication. [AR 22, 27-28].

Based on the record as a whole, this Court can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056. Accordingly, plaintiff has not shown a substantial likelihood of prejudice from the ALJ's failure to discuss Ms. Green's lay testimony, and the ALJ's error was harmless.

## Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

July 15, 2011

ANDREW J. WISTRICH
United States Magistrate Judge